UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MARSHALL D. MOORE, | : | Case No. 3:17-cv-58 |
|---|---|---|
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

I. **Introduction**

Plaintiff Marshall D. Moore brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on April 24, 2014, asserting that he could no longer work a substantial paid job due to several physical and mental impairments. Administrative Law Judge (ALJ) Mary F. Withum concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Withum's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" beginning February 27, 2014. He was forty-seven years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[1]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Withum that he stopped working in 2014 because he had severe carpal tunnel in his right hand and kept dropping his tools and parts. (Doc. #7, *PageID* #82). He had surgery but, afterwards, he "had tremendous loss of grip in that hand." *Id.* When he tries to, for example, hold a screwdriver, his hand starts to lose grip and he drops it. *Id.* at 83.

In 1999 or 2000, Plaintiff got into an accident and had to have a herniated disc in his neck fused. *Id.* at 91. As a result, he has pain in his neck. *Id.* at 81. He also has pain in his lower back. *Id.* On a scale from one to ten, with or without medication, if he is active, his back pain is between eight and nine. *Id.* at 82-83. But if he is not active and he takes medication, his pain is around six. *Id.* at 83. In addition, Plaintiff has pain in his knees—"they pop and crack." *Id.* at 92. He also has pain in his ankles. *Id*. It is a sharp

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

pain "in the joint of [his] ankles." *Id.* at 93. On a scale from one to ten, his pain is between eight and nine. *Id*.

When Plaintiff walks for five and ten minutes, "my toes on my right foot[,] they curl up and I'm walking on the tips of my toes - - on my little toes …." *Id.* at 83, 93. He then has to sit for an hour or two before he can walk again. *Id.* at 93. His doctors are still trying to determine why it happens, but they think it is lupus. *Id.* at 83, 86. In the winter, he sometimes wakes up and his hands are curled up too. *Id.* at 86.

Plaintiff struggles with anxiety and depression. *Id.* at 87-89. He takes medication; it helps "a little bit." *Id.* at 89. It "kind of just takes everything off the brain." *Id*. He also has problems with focus and concentration. *Id.* at 94.

Plaintiff estimated that he can stand for fifteen to twenty minutes, walk for ten minutes, and sit for an hour at a time. *Id.* at 91-92. Because of his pain, he can only bend at the waist a little bit. *Id.* at 91. He cannot kneel, crawl, or crouch because of his knees and ankles. *Id.* at 92. He can comfortably lift twenty-five to thirty pounds. *Id*.

Plaintiff lives with his wife and two daughters—ages eighteen and twenty. *Id.* at 78. He has a driver's license, and although it scares his wife and daughters, is able to drive. *Id.* at 77-78. He only made it to ninth grade in school and has a second or third-grade education. *Id.* at 78. He can read and write very little. *Id*. During the day, he usually sits around and watches TV. *Id.* at 90. He sometimes works on his car. *Id.* at 87. If he does, he usually works for twenty to thirty minutes and then has to take a break. *Id*.

### B. Medical Opinions

#### i. Rick Gebhart, D.O.

Dr. Gebhart, a physician at Crossroads Medical Center, opined Plaintiff can occasionally lift or carry up to twenty pounds. *Id.* at 896. He can sit for two hours, stand for ten minutes, and walk for five minutes. *Id.* at 897. He can never finger or feel with his right hand but can occasionally reach, handle, or push/pull with that hand. *Id.* at 898. He can occasionally operate foot controls. *Id.* Plaintiff cannot kneel, crouch, crawl, or climb ladders or scaffolds. *Id.* at 899. He can occasionally balance and climb stairs or ramps. *Id.* He can never work at unprotected heights. *Id.* at 900. He can occasionally operate a motor vehicle and tolerate exposure to extreme cold or heat. *Id.*

Dr. Gebhart indicated Plaintiff has a hearing impairment. *Id.* at 899. He does not have the ability to hear and understand simple oral instructions and to communicate simple information. *Id.* He is not able to use a telephone to communicate. *Id.* He cannot read very small print or read ordinary newspaper or book print. *Id.* Dr. Gebhart noted that Plaintiff "went to special [education] [through] 9th grade. [His] [r]eading level is around 2nd or 3rd grade. His daughter is always with him [at appointments] to interpret my findings (I speak simple)." *Id.*

#### ii. Giovanna M. Bonds, Ph.D.

Dr. Bonds evaluated Plaintiff on July 1, 2014, and Margaret K. Glaser, M.A., Psychology Assistant, administered the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV). *Id.* at 585-94. On the WAIS-IV, Plaintiff obtained a Verbal Comprehension Index of 72, a Perceptual Reasoning Index of 98, Working Memory

Index of 77, Processing Speed Index of 79, and a Full Scale IQ score of 78. *Id.* at 589. His Perceptual Reasoning score falls in the average range, while all of the other scores fall into the borderline range. *Id.* at 590.

Dr. Bonds diagnosed Borderline Intellectual Functioning. *Id.* at 591. She opined, "he may have difficulties with reading and following written instructions." *Id.* at 592. His attention and concentration during the exam were satisfactory, his pace was adequate, and he did not take excessive breaks. *Id.* He, however, did report that because of his physical impairments, he has to take frequent breaks. *Id.* "He does not have any problems with controlling his emotions or anger that would affect him in being able to work with other people." *Id.* Although he reported that he is sometimes anxious or stressed, it does not rise to the level of interference with his ability to perform work activities. *Id.*

### iii. Mary K. Hill, Ph.D., & Karla Voyten, Ph.D.

Dr. Hill reviewed Plaintiff's records on July 9, 2014. *Id.* at 103-15. She found Plaintiff had four severe impairments: disorders of back–discogenic and degenerative; osteoarthritis and allied disorders; carpal tunnel syndrome; and borderline intellectual functioning. *Id.* at 108. She opined he had a mild restriction in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.* at 108-09.

Dr. Hill opined that Plaintiff's psych symptoms will limit his ability to understand, remember, and follow instructions; his concentration, persistence, and pace; and his

5

ability to tolerate work pressures. *Id.* at 112-13. "[He is] able to perform 1-3 step tasks at a reasonable pace in settings that do not require meeting production line schedules." *Id.* at 113. He may need extra time, repetition, and/or hands-on/demonstrations for new learning. *Id.* at 112. Further, he is "able to work in a static environment where change is explained and gradually introduced. [He] [m]ay need extra repetition for changes in routine." *Id.* at 113.

On January 28, 2015, Dr. Voyten reviewed Plaintiff's records. *Id.* at 132-49. She found Plaintiff had one additional severe impairment—hearing loss not treated with cochlear implantation. *Id.* at 140.

### iv. William Bolz, M.D., & James Cacchillo, D.O.

On July 6, 2014, Dr. Bolz reviewed Plaintiff's records. *Id.* at 103-15. He opined Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 110. He can stand and/or walk for a total of six hours and sit for six hours. *Id.* He can frequently crawl and occasionally climb ladders, ropes, and scaffolds. *Id.* at 111. He can handle frequently with his right upper extremity. *Id.* Dr. Bolz concluded that Plaintiff is not under a disability. *Id.* at 115.

Dr. Cacchillo reviewed Plaintiff's records on January 20, 2015. *Id.* at 132-49. He affirmed Dr. Bolz's assessment with one exception—he opined Plaintiff was only able to handle occasionally with his right upper extremity. *Id.* at 144.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other

6

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

7

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.   The ALJ's Decision

As noted previously, it fell to ALJ Withum to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1:   Plaintiff has not engaged in substantial gainful employment since February 27, 2014.

Step 2:   He has the severe impairments of bilateral sensorineural hearing loss, cervical spine spondylosis status-post fusion surgery, right knee degenerative joint disease, right wrist carpal tunnel syndrome status-post release, left foot degenerative joint disease, generalized anxiety disorder, and depression.

Step 3:   He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … with additional limitations meaning, only occasional work on ladders, ropes, and scaffolds, frequent crawling, frequent handling and fingering with his right upper extremity, and he should avoid concentrated exposure to

8

>       excessive noise. He is limited to frequent interactions with the
>       general public."
>
> Step 4:    He is unable to perform any of his past relevant work.
>
> Step 5:    He could perform a significant number of jobs that exist in the
>            national economy.

(Doc. #7, *PageID* #s 47-63). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 63.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ's mental residual functional capacity assessment is not based on substantial evidence because it fails to incorporate several limitations. Further, she failed to properly evaluate the treating source's opinions. The Commissioner maintains that substantial evidence supports both the ALJ's assessment of Plaintiff's mental residual functional capacity and the ALJ's evaluation of the medical opinions.

### A. **Mental Residual Functional Capacity**

At Step Four of the five-step sequential evaluation process, the ALJ is responsible for assessing an individual's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1546(c). "RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Soc. Sec. R. 96-8p, 1996 WL 674184, at *2 (Soc. Sec. Admin. July 2, 1996) (emphasis in original).

The ALJ must consider all of the individual's medically determinable impairments—including those that are not severe. 20 C.F.R. § 404.1545(a)(2). Indeed,

9

an RFC is "based on all relevant evidence in [the individual's] case record." *Id.* § 404.1545(a)(1). The ALJ's assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Soc. Sec. R 96-8p, 1996 WL 674184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

In the present case, ALJ Withum's RFC assessment included one mental limitation—"He is limited to frequent interactions with the general public." (Doc. #7, *PageID* #53). Plaintiff contends, "The ALJ's mental residual functional capacity is unsupported by substantial evidence because it fails to incorporate several critical limitations that would drastically alter [Plaintiff's] functional capabilities." (Doc. #9, *PageID* #934). Plaintiff directs attention to the opinions of Dr. Bonds, Dr. Gebhart, Dr. Hill, and Dr. Voyten—asserting that each one contains mental limitations that the ALJ did not adequately evaluate. But, the Commissioner asserts, "The ALJ explicitly considered Plaintiff's cognitive abilities and concluded that Plaintiff's impairment did not result in the level of severity that he alleges." (Doc. #11, *PageID* #951). For example, the ALJ acknowledged his borderline intellectual functioning but found that it did not significantly limit his ability to perform work-related functions. (Doc. #7, *PageID* #51).

The ALJ addressed Dr. Bonds' opinion and Dr. Gebhart's opinion. *Id.* at 60, n.7. She recognized that Dr. Bonds diagnosed borderline intellectual functioning but found, "the record is void of other diagnoses of this impairment and the observations do not support the severity of this impairment." *Id.* at 51. She also provided examples in

support of her conclusion. The ALJ also discussed Dr. Bonds' opinion that Plaintiff "may have difficulties with reading and following written instructions." *Id.* at 591-92. She did "not find that the evidence supports an additional limitation consistent with [Dr. Bonds' statement." *Id.* at 60, n.7. And, although she did not refer explicitly to Dr. Gebhart's opinion, she addressed Plaintiff's second-grade reading level. *Id.* at 60, n.7.

Further, as correctly recognized by the Commissioner, any error in considering these opinions is harmless because "the vocational expert testified that the unskilled positions discussed only require a 2nd grade reading level …." *Id.* In other words, although the ALJ did not include this limitation in Plaintiff's RFC, the jobs she relied on at Step Five account for his reading level.

The ALJ also considered part of the opinions of Dr. Hill and Dr. Voyten, the State agency record-reviewing psychologists. She discussed their opinion that Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace. *Id.* at 52, 59. The ALJ, however, disagreed and found he had mild difficulties in that area. *Id.* In support, she noted that Plaintiff was able to recall six digits forward and four backward; make important decisions; manage his funds; remember to take care of his personal needs and medication; and maintain sufficient attention and concentration at the hearing. *Id.* at 59. Further, the ALJ cites several examples of when a doctor noted Plaintiff was alert, oriented, and had good insight, good judgment, normal mood, normal affect, and/or intact recent and remote memory. *Id.* (citations omitted). And, she observed that Dr. Bonds noted he "was casually dressed, [and] had normal speech, mood, and affect." *Id.* (citation omitted).

11

Although some of this evidence is pertinent to evaluating Plaintiff's concentration, persistence, or pace, it is difficult to imagine how Plaintiff's casual dress or normal affect is relevant to his ability to maintain concentration, persistence, or pace. *See* 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C)(3) ("*Concentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.").

Nevertheless, Dr. Hill and Dr. Voyten also found that Plaintiff had several specific mental limitations. They opined that he could understand, remember, and perform one to three step tasks "at a reasonable pace in settings that do not require meeting production line schedules." *Id.* at 113, 146. He needs hands-on/demonstrations for new learning and may need extra time and repetition. *Id.* at 112, 145-46. Further, he is "able to work in a static environment where change is explained and gradually introduced. [He] [m]ay need extra repetition for changes in routine." *Id.* at 113, 146-47.

The ALJ does not specifically address these limitations. The Commissioner argues that they fall under the umbrella of "concentration, persistence, or pace." (Doc. #11, *PageID* #953) ("it was reasonable for the ALJ to not accept those psychologists' opinions of functional limitations that appeared to be associated with Plaintiff's 'moderate' concentration, persistence, or pace.").

The ALJ's discussion of concentration, persistence, or pace does not adequately address all of Dr. Hill and Dr. Voyten's specific limitations. For example, she does not address their opinion that Plaintiff is "able to work in a static environment where change is explained and gradually introduced." (Doc. #7, *PageID* #s 113, 146-47). Likewise,

12

the ALJ does not address their opinion that Plaintiff needs hands-on demonstrations for new learning. *Id.* at 112, 146.

The Commissioner argues in the alternative, "Even if the evidence that Plaintiff relies on could support limitations in Plaintiff's ability to understand and learn new tasks, …, the ALJ's failure to include such limitations in the RFC finding would not result in reversible error." (Doc. #11, *PageID* #954). This is because, according to the Commissioner, all of the jobs identified by the vocational expert at the hearing and relied on by the ALJ had an SVP of 2, which corresponds to unskilled work. *Id.* (citing Doc. #7, *PageID* #s 61-62, 97-98; *Dictionary of Occupational Titles* (DOT), App. B; Soc. Sec. R. 00-4p, 2000 WL 1898704 (Soc. Sec. Admin. Dec. 4, 2000)). "By its very definition, unskilled work would be simple and likely repetitive in nature since it is comprised of simple duties that can be learned in a short time." (Doc. #11, *PageID* #954) (citing *Allison v. Apfel,* 229 F.3d 1150, 2000 WL 1276950, at *4 (6th Cir. Aug. 30, 2000)).

Neither the ALJ nor the Commissioner adequately addresses Dr. Hill and Dr. Voyten's opinion that Plaintiff needs hand-on demonstrations for new learning. The ALJ acknowledges, in a footnote, "I asked the vocational expert to consider that an individual such as the claimant could only perform jobs that could be learned by demonstration only, would that impact these positions? The vocational expert testified that the positions discussed would be eliminated." (Doc. #7, *PageID* #62, n.10). She states that she considered this limitation and found, "the record evidence supports the restrictions discussed under Finding No. 5 [(Plaintiff's RFC)] and no more. *Id.* But, the ALJ did not explain why she rejected Dr. Hill and Dr. Voyten's opinion that Plaintiff needs hands-on

13

demonstration for new learning. This is significant because the vocational expert testified that if a hypothetical individual with Plaintiff's residual functional capacity was limited to jobs that could be learned by demonstration only, it would eliminate all of the jobs previously identified by the vocational expert (and relied on by the ALJ). *Id.* at 97-98. All of the jobs she identified were SVP 2, and learning by demonstration would be SVP 1. *Id.* The vocational expert did not indicate whether there are other jobs that the hypothetical person could perform. The ALJ's failure to meaningfully address this limitation constitutes reversible error. *See Cottle v. Comm'r of Soc. Sec.*, No. 4:14-CV-679, 2015 WL 3905125, at *3 (N.D. Ohio June 25, 2015) ("if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC.") *(citing Fleischer v. Astrue,* 774 F.Supp.2d 875, 881 (N.D. Ohio 2011)); Soc. Sec. R 96-8p, 1996 WL 674184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to

15

determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Marshall D. Moore was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

March 8, 2018　　　　　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge